VIRGINIA ALCOHOLIC BEVERAGE CONTROL BOARD

v.

VFW OCEAN VIEW POST 3160

No. 1410-88-1

Decided April 3, 1990

COUNSEL

Donald A. Lahy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellant.

Howard E. Copeland, for appellee.

OPINION

**BAKER, J.**—The Virginia Alcoholic Beverage Control Board (Board) appeals from a judgment of the Circuit Court of the City of Norfolk (trial court) which reversed the decision of the Board. The Board, after a hearing, placed the VFW Ocean View Post 3160 (licensee) on probation for permitting a gambling device to be present on the licensee's premises in violation of Code § 4-37(A)(1)(n).[1] Licensee appealed the Board's decision to the trial court asserting, as it does here, that the device complained of was permitted pursuant to a permit issued by the Commissioner of Revenue of the City of Norfolk by the authority granted in Code § 18.2-340.2. By order entered on September 16, 1988, the trial court reversed the Board and dismissed the charge against the licensee, stating in its order that "§ 18.2-340.1(3) of the Code of Virginia as applied in this case to VFW Ocean View Post 3160 is impermissibly vague and ambiguous, that the statute is a part of the criminal laws and must be strictly construed, that the Court is unable to determine the meaning of 'prearranged' in the statute and is unable to determine whether the conduct in issue is illegal, and therefore, that § 18.2-340.1(3) is unenforceable when applied to the 'Nevada cards' as operated by VFW Ocean View Post 3160."

The facts upon which the Board based its decision are not in dispute. Licensee is an organization as defined in Code § 18.2-340.1. Licensee holds a Virginia Alcoholic Beverage Control Board license as well as a valid permit for the conduct of authorized "raffles." The permit was issued by the office of the Commissioner of Revenue for the City of Norfolk. On November 12, 1986, the Board's special agent, B. T. Seberly, acting on a com-

---

[1] § 4-37. SUSPENSION OR REVOCATION OF LICENSES; MONETARY PENALTIES. —
A. *Grounds for suspension or revocation.* — The Board may suspend or revoke any licenses issued by it other than a brewery license, in which case the Board may impose penalties as provided in subsection C1 of this section, if it has reasonable cause to believe:
(1) That the licensee, or if the licensee is a partnership or association, any partner or member thereof, or if the licensee is a corporation, any officer, director, or manager thereof or shareholder owning ten percent or more of its capital stock: . . . .
(n) Has possessed any illegal gambling apparatus, machine or device upon the licensed premises.

plaint of gambling at licensee's premises, investigated the complaint. Upon being admitted to the premises, Seberly found and seized a large number of pull-tab cards known as "Nevada Club Cards." Approximately 44,000 cards were seized. The parties stipulated that the cards seized were on licensee's premises, were possessed by licensee, and were in use by it.

A Nevada Club Card sells for twenty-five cents and each card has five chances to win. Upon purchasing a card, the player must pull open each of five perforated windows. The opening of a window exposes either three bars, three bells, three oranges, three lemons, three cherries, or combinations thereof. The back of the card shows that, to be a "winner," all three symbols in the windows must match. Although the winning cards are determined in advance by the manufacturer, licensee did not know which cards contained winning combinations. The licensee purchased the cards by the case. Each case contained 1,680 pre-printed cards. At twenty-five cents per card, the sale of an entire case would yield $420 in gross sales to the seller. Each case has a limited number of predetermined winning cards. The total payout for all winning cards is $284, thereby providing the seller with $136 net profit per case.

At the trial court hearing the Attorney General conceded that licensee had, at all times, been open and honest about its use and sale of the cards, and did not allow the sale of any cards until it received advance approval from the local commissioner of revenue. However, licensee did not seek an advance ruling from the Board or the office of the Attorney General. During the Board proceedings, counsel for licensee sought an opinion from the Commonwealth Attorney for the City of Norfolk as to the legality of sales of the cards. The Commonwealth Attorney responded by letter dated July 6, 1987, stating that although the use of the Nevada Club Cards "could be technically illegal" in that they did not fall within the statutory definition of "raffle," he did not feel that the legislature intended to prohibit the type of activity being conducted by licensee and that the sale of the Nevada Club Cards was no more offensive than an ordinary raffle or instant bingo.

■ When applicable, the provisions of Code § 18.2-340.1(3) provide an exemption from the anti-gambling statutes. The issue in this case is whether the Nevada Club Cards constitute "gam-

bling devices" as defined in Code § 18.2-325,[2] and, if so, whether the activity is exempted by Code § 18.2-340.1(3). We hold that the Nevada Club Cards are "gambling devices." Thus, to overturn the decision of the Board, the burden is upon licensee to show that Code § 18.2-340.1(3) exempts the sale of Nevada Club Cards. If the wording of the statute cannot be shown to provide a shield for licensee then it has none. We find no such language in Code § 18.2-340.1(3) which exempts the cards; therefore, we find that licensee did not meet its burden of proof.

Code § 18.2-340.1(3) defines the term "raffle" to mean a random drawing of either a name or number which corresponds with a ticket or other proof of purchase of the winning name or number. The term "raffle" does not encompass a system whereby, to win, a purchaser must match bars, cherries or lemons in triple sequence as required by the Nevada Club Cards.

For the reasons stated, the judgment of the trial court is reversed and the finding of the Board sustained.

*Reversed and remanded.*

Barrow, J., and Coleman, J., concurred.

---

[2] § 18.2-325. DEFINITIONS. — (1) *"Illegal gambling".* — The making, placing or receipt, of any bet or wager in this Commonwealth of money or other thing of value, made in exchange for a chance to win a prize, stake or other consideration or thing of value, dependent upon the result of any game, contest or any other event the outcome of which is uncertain or a matter of chance, whether such game, contest or event, occurs or is to occur inside or outside the limits of this State, shall constitute illegal gambling.

(2) *"Gambling device".* — A gambling device includes:

(a) Any device, machine, paraphernalia, equipment, or other thing, including books, records and other papers, which are actually used in an illegal gambling operation or activity, and

(b) Any machine, apparatus, implement, instrument, contrivance, board or other thing, including but not limited to those dependent upon the insertion of a coin or other object for their operation, which operates, either completely automatically or with the aid of some physical act by the player or operator, in such a manner that, depending upon elements of chance, it may eject something of value or determine the prize or other thing of value to which the player is entitled . . . .